UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

CARL D.,

                              Plaintiff,

v.                                                                    5:17-cv-01114
                                                                      (TWD)
COMM'R OF SOC. SEC.,

                              Defendant.

_____

APPEARANCES:                                          OF COUNSEL:

OLINSKY LAW GROUP                                     HOWARD D. OLINSKY, ESQ.
*Attorneys for Plaintiff*
300 South State Street, Suite 420
Syracuse, New York 13202

HON. GRANT C. JAQUITH                                 PRASHANT TAMASKAR, ESQ.
United States Attorney for the                        Special Assistant U.S. Attorney
  Northern District of New York
*Attorneys for Defendant*
James T. Foley U.S. Courthouse, Rm. 218
Albany, New York 12207

OFFICE OF GENERAL COUNSEL                             STEPHEN P. CONTE, ESQ.
Social Security Administration                        Chief Counsel, Region II
26 Federal Plaza, Room 3904
New York, New York 10278

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

**MEMORANDUM-DECISION AND ORDER**

        Plaintiff Carl D. brings this action pursuant to 42 U.S.C. § 405(g) seeking judicial review

of a final decision by the Commissioner of Social Security ("Defendant" or "Commissioner")

denying his application for Supplemental Security Income ("SSI") benefits.  (Dkt. No. 1.)  The

parties consented to direct review of this matter by a Magistrate Judge pursuant to 28 U.S.C. §

636(c), Fed. R. Civ. P. 73, N.D.N.Y. Local Rule 72.2(b), and General Order 18. (Dkt. Nos. 4, 5.)

Both parties have filed briefs. (Dkt. Nos. 9, 12.) Oral argument was not heard. For the reasons

discussed below, Plaintiff's motion for judgment on the pleadings is denied and Defendant's

motion for judgment on the pleadings is granted. The Commissioner's decision denying Plaintiff

disability benefits is affirmed, and Plaintiff's complaint is dismissed.

## I.      BACKGROUND AND PROCEDURAL HISTORY

Plaintiff was born on April 7, 1962. (Administrative Transcript at 35.[1]) Plaintiff

reported completing three years of college and vocational training as a machine operator. (T.

212.) He previously worked as a laborer, maintenance man, and food prep cook. (T. 53, 237.)

He stopped working regularly in 2007 after he was laid off. (T. 39.) Plaintiff alleges disability

due to cardiac disease, arthritis, Methicillin-resistant Staphylococcus aureus ("MRSA"), spine

pain, and gastroesophageal reflux disease ("GERD"). (T. 74.)

On June 13, 2014, Plaintiff protectively filed an application for SSI, alleging disability as

of February 21, 2011. *Id.* The application was denied on September 8, 2014. (T. 83.)

Thereafter, Plaintiff filed a written request for a hearing, which was held on April 5, 2016, by

Administrative Law Judge ("ALJ") Gregory M. Hamel. (T. 32-73.) Plaintiff appeared at the

hearing with his attorney and testified. *Id.* A vocational expert ("VE") also testified. (T. 63-72.)

On June 7, 2016, the ALJ issued a decision finding Plaintiff was not disabled. (T. 17-27.)

The ALJ's decision became the Commissioner's final decision when the Appeals Council denied

---

[1]  The Administrative Transcript is found at Dkt. No. 8. Citations to the Administrative Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth herein will be used rather than the numbers assigned by the Court's CM/ECF electronic filing system. Citations not made to the Administrative Transcript will use the Court's CM/ECF electronic filing system.

Plaintiff's request for review on August 14, 2017. (T. 1-6.) Plaintiff timely commenced this action on October 5, 2017. (Dkt. No. 1.)

## II.     APPLICABLE LAW

### A.     Standard for Benefits[2]

To be considered disabled, a plaintiff seeking SSI disability benefits must establish that he or she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A) (2015). In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

Acting pursuant to its statutory rulemaking authority, 42 U.S.C. § 405(a), the Social Security Administration ("SSA") promulgated regulations establishing a five-step sequential evaluation process to determine disability. 20 C.F.R. § 416.920(a)(4) (2015). Under that five-step sequential evaluation process, the decision-maker determines:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or

---

[2] While the SSI program has special economic eligibility requirements, the requirements for establishing disability under Title XVI, 42 U.S.C. § 1382c(a)(3) (SSI) and Title II, 42 U.S.C. § 423(d) (Social Security Disability Insurance), are identical, so that "decisions under these sections are cited interchangeably." *Donato v. Sec'y of Health and Human Servs.*, 721 F.2d 414, 418 n.3 (2d Cir. 1983) (citation omitted).

> combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).

The plaintiff-claimant bears the burden of proof regarding the first four steps. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008) (quoting *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996)). If the plaintiff-claimant meets his or her burden of proof, the burden shifts to the defendant-Commissioner at the fifth step to prove that the plaintiff-claimant is capable of working. *Id.*

**B.    Scope of Review**

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. *Featherly v. Astrue*, 793 F. Supp. 2d 627, 630 (W.D.N.Y. 2011) (citations omitted); *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)). A reviewing court may not affirm the ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence. *Johnson*, 817 F.2d at 986.

A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision. 42

U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991).  An ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision.  *Roat v. Barnhart*, 717 F. Supp. 2d 241, 248 (N.D.N.Y. 2010); *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).  "Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (citations omitted).  It must be "more than a mere scintilla" of evidence scattered throughout the administrative record.  *Featherly*, 793 F. Supp. 2d at 630; *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  *Williams*, 859 F.2d at 258 (citations omitted).  If supported by substantial evidence, the ALJ's findings must be sustained "even where substantial evidence may support the plaintiff's positions and despite that the court's independent analysis of the evidence may differ from the [ALJ's]."  *Rosado*, 805 F. Supp. at 153.  A reviewing court cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision.  *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

**III.    THE ALJ'S DECISION**

The ALJ applied the five-step sequential evaluation promulgated by the Commissioner for adjudicating disability claims.  (T. 17-27.)  The ALJ found Plaintiff had not engaged in

substantial gainful activity since June 13, 2014, the application date. (T. 19.[3])  He found

Plaintiff has the following severe impairments: ischemic heart disease and herniated lumbar disc.

*Id*.  He found Plaintiff also has the following non-severe impairments: GERD, MRSA, arthritis,

obesity, and history of substance use disorder.  (T. 20.)  The ALJ determined Plaintiff did not

have an impairment or combination of impairments that meets or medically equals one of the

listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1.  (T. 22.)  The ALJ then

determined Plaintiff has the residual functional capacity ("RFC") to perform light work, as

defined in 20 C.F.R. § 416.967(b),[4] except he cannot work in hazardous environments or climb

ladders and similar devices.  *Id*.  In making the RFC determination, the ALJ stated he considered

all of Plaintiff's symptoms and the extent to which those symptoms could "reasonably be

accepted as consistent with the objective medical evidence and other evidence," based on the

requirements of 20 C.F.R. § 416.929 and Social Security Rulings ("SSR") 96-4p.  (T. 22).  The

ALJ further stated that he considered opinion evidence pursuant to 20 C.F.R. § 416.927 and

SSRs 96-2p, 96-5p, 96-6p, and 06-3p.  *Id*.  The ALJ found Plaintiff was unable to perform his

past relevant work.  (T. 25-26.)  After considering Plaintiff's age, education, work experience,

and RFC, the ALJ found there are jobs existing in significant numbers in the national economy

---

[3]  Plaintiff testified he does informal jobs for others for pay, including giving rides to his friends, doing household tasks, and fixing cars.  (T. 37-39.)  He is paid between $10 and $50 for each job.  *Id*.  The ALJ noted that while this pay is not reported as part of Plaintiff's income, it was clear from Plaintiff's testimony that he does not perform these tasks at a level consistent with substantial gainful employment.  (T. 19.)

[4]  "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, [the claimant] must have the ability to do substantially all of these activities."  20 C.F.R. § 416.967(b).

that Plaintiff can perform, such as cafeteria attendant and laundry worker. (T. 26.) The ALJ

concluded Plaintiff has not been under a disability, as defined in the Social Security Act, since

June 13, 2014, the date the application was filed. (T. 27.[5])

## IV.    RELEVANT MEDICAL RECORDS AND OPINION EVIDENCE

### A.    Elke Lorensen, M.D.

Plaintiff underwent a consultative medical examination with Dr. Lorensen on August 12,

2014. (T. 605.) His primary complaints were back pain and a history of cardiac problems. (T.

606.) In 2011, Plaintiff underwent coronary artery bypass grafting. *Id*.; *see also* T. 253. In

2013, he underwent Implantable Cardioverter Defibrillator implantation surgery. (T. 606; *see*

*also* T. 276, 496-98.) Plaintiff stated he was not receiving any treatment for his back pain. (T.

606.) He was able to cook, clean a little daily, do laundry every two to four weeks, shop when

necessary, shower once or twice a week, watch television, read, go to the library, and socialize

with friends. *Id*.

Dr. Lorensen noted Plaintiff appeared to be in no acute distress. *Id*. His gait was normal.

*Id*. He could walk on his heels and toes without difficulty. *Id*. He could fully squat and his

stance was normal. *Id*. Plaintiff used no assistive devises and needed no help changing for the

examination or getting on and off the examination table. *Id*. He was able to rise from a chair

without difficulty. *Id*.

On examination, Plaintiff's cervical spine showed full flexion, extension, lateral flexion

bilaterally, and full rotary movement bilaterally. (T. 607.) There was no scoliosis, kyphosis, or

---

[5] Although SSI is not payable prior to the month following the month in which the application was filed, 20 C.F.R. § 416.335, the ALJ stated he considered Plaintiff's complete medical history consistent with 20 C.F.R. § 416.912(d). (T. 17.)

abnormality of the thoracic spine. *Id.* Plaintiff's lumbar spine showed limited flexion at fifty degrees, full extension, full lateral flexion bilaterally, and full rotation bilaterally. *Id.* Plaintiff had negative straight leg raising ("SLR") bilaterally. *Id.* He had full range of motion in his shoulders, elbows, forearms, and wrists bilaterally. *Id.* His hip and knee flexion were ninety degrees bilaterally. *Id.* He had a full range of motion of his ankles bilaterally. *Id.* His joints were stable and nontender. *Id.* There was no redness, heat, swelling, or effusion. *Id.* Plaintiff's strength was 5/5 in the upper and lower extremities. *Id.* Plaintiff's hand and finger dexterity were intact. (T. 608.) His grip strength was 5/5 bilaterally. *Id.*

Dr. Lorensen diagnosed Plaintiff with coronary artery disease, status post myocardial infarction, status post coronary artery bypass grafting, and back pain. *Id.* She noted Plaintiff's prognosis was fair. *Id.* Dr. Lorensen opined Plaintiff has no gross limitations sitting, standing, walking, or handling small objects. *Id.* She opined Plaintiff has moderate restrictions bending, lifting, and reaching. *Id.*

### B.    Bruce Silverstein, M.D.

On September 25, 2014, Plaintiff presented to Dr. Silverstein to establish primary care. (T. 726.) Plaintiff appeared healthy and well developed, with no signs of acute distress. (T. 727.) His general health was reported as "good." (T. 279.) He denied musculoskeletal symptoms. *Id.* He was diagnosed with hypertension, depression, and anxiety. (T. 730.) Dr. Silverstein prescribed Metoprolol, Aspirin, Tylenol arthritis, and Ibuprofen. (T. 731.)

On April 15, 2015, Plaintiff followed up with Dr. Silverstein on his hypertension. (T. 723.) He requested an adjustment of his proton pump inhibitor and reported worsening symptoms of osteoarthritis. *Id.* Plaintiff reported following a healthy diet and exercising five times per week. *Id.* He also reported pain on the back of his neck, lower back, and right ankle.

8

*Id*.  He felt significantly worse since his last visit.  *Id*.  Dr. Silverstein diagnosed hypertension, depression, anxiety, right ankle and foot pain, and osteoarthritis in multiple sites.  (T. 724.)  He continued Plaintiff's medications.  *Id*.

Plaintiff returned on July 21, 2015, complaining of pain "everywhere" and requested a prescription for Tramadol.  (T. 720.)  Plaintiff's ankle condition had improved and was well-controlled since last visit.  *Id*.  He was not exercising.  *Id*.  Dr. Silverstein prescribed Tramadol and continued Plaintiff's other medications.  (T. 722.)  On July 31, 2015, Plaintiff presented with abdominal pain and reported his back pain was mostly well controlled, but he had flare-ups.  (T. 719.)  Plaintiff denied myalgia, back pain, muscle pain, and spasms.  *Id*.  He reported taking his medication as prescribed and requested a refill for Tramadol.  (T. 719.)  On August 20, 2015, Plaintiff reported feeling better.  (T. 714.)

On December 4, 2015, Plaintiff presented complaining of mildly worsening anxiety.  (T. 711.)  Plaintiff appeared healthy and well developed with no signs of acute distress present.  *Id*.  On examination, the range of motion in his spine was limited with pain on flexion and extension.  (T. 712.)  Plaintiff reported Tramadol was "working well" and his medications were continued.  (T. 713.)

On January 28, 2016, and February 10, 2016, Plaintiff presented for coughing and constipation, respectively.  (T. 705, 708.)  On March 22, 2016, Plaintiff presented complaining of fatigue and requested B12 testing.  (T. 702.)

On April 4, 2016, Dr. Silverstein completed a medical source statement.  (T. 823-25.)  He diagnosed Plaintiff with chronic pain and cardiac history, with symptoms of fatigue and shortness of breath.  (T. 823.)  Plaintiff's prognosis was fair.  *Id*.  He opined Plaintiff was limited to the following: sitting two hours at one time and at least six hours total in an eight-hour work

day; standing for forty-five minutes at one time and walking/standing for about two hours total in an eight-hour workday; lifting twenty pounds rarely and ten pounds occasionally; occasionally twisting, stooping, bending, crouching, squatting, and climbing stairs; rarely climbing ladders; occasionally performing maneuverers with his head and neck such as looking down and turning his head right or left; occasionally grasping and turning/twisting objects with his hands; occasionally performing fine manipulations with his fingers; and occasionally reaching (including overhead).  (T. 823-24.)  Dr. Silverstein opined Plaintiff would need an extra ten-minute break once or twice a day; would be off task ten percent of the day; and would likely be absent from work about two days per month due to his treatment and impairments.  (T. 825.)

### C.    Stage Agency Assessment

On September 8, 2014, C. Ballard, SDM completed a case analysis and RFC assessment. (T. 79-80.)  He found Plaintiff could: lift twenty pounds occasionally and ten pounds frequently; stand and/or walk for a total of about six hours in an eight-hour workday; sit for a total of about six hours in an eight-hour work day; push and pull; and did not have any postural, manipulative, visual, communicative, or environmental limitations.  *Id*.

### D.    Adrianne O'Quinn, M.D.

On March 2, 2016, Plaintiff treated with Adrianne O'Quinn, M.D., for pain management. (T. 812.)  Plaintiff reported persistent low back pain, which was relieved by lying flat on his back and aggravated by physical activity.  *Id*.  He complained of occasional radiation into the left thigh.  *Id*.  On examination, he exhibited facet tenderness at L3, L4, L5, and S1.  (T. 814.)  His range of motion was limited to sixty degrees flexion and ten degrees extension.  *Id*.  His left hip flexion, knee extension, and dorsiflexion strength were diminished at 4/5.  *Id*.  Dr. O'Quinn diagnosed spondylosis without myelopathy or radiculopathy, myalgia, and intervertebral disc

degeneration in the lumbosacral region. *Id.* She requested authorization for right L2-L5 medial branch blocks. (T. 814.) She noted that pain medications would not be prescribed due to past drug use. *Id.*

On April 1, 2016, Plaintiff returned to Dr. O'Quinn for medial branch blocks at L2-L5. (T. 816.) On April 14, 2016, Plaintiff reported one hundred percent relief for a few hours. (T. 818.) On examination, Plaintiff exhibited facet tenderness with extension and rotation. (T. 820.) His range of motion was limited to forty-five degrees flexion and ten degrees extension. *Id.* Dr. O'Quinn noted she would request authorization for a right L2-L5 radiofrequency ablation. *Id.* She did not submit a medical source statement.

### E.  Medical Imaging

In August 2010, an MRI of the lumbar spine, status post slip and fall and several motor vehicle accidents, revealed a central and left central herniation/extrusion at L5-S1 with caudal migration butting to the origin of the descending left S1 nerve root. (T. 679.) At L4-L5 there was a minimal herniation/protrusion just barely indenting the ventral aspect of the thecal sac, without distinct impact on the neural elements. *Id.* "Otherwise, unremarkable MRI lumber spine." *Id.* A CT scan of the lumbosacral spine, dated November 18, 2015, showed advance degenerative disc disease at L5-S1 with a left paramedian focal bulge or herniation of the disc, which displaced the left S1 nerve root. (T. 694.) An X-ray, dated March 9, 2016, revealed severe disc space narrowing at L5-S1 with an approximately eight millimeters posterior subluxation of L5 on S1. (T. 693.)

## V.  THE PARTIES' CONTENTIONS

Plaintiff claims the physical RFC decision is not supported by substantial evidence because the ALJ failed to follow the treating physician rule, failed to include limitations opined

by the consultative examiner, and relied on the opinion of a single decision maker. (Dkt. No. 9 at 10-16.) Thus, Plaintiff also contends the ALJ's Step Five finding was deficient. *Id*. at 16. In response, Defendant contends the ALJ's decision applied the correct legal standards and is supported by substantial evidence. (Dkt. No. 12 at 6-15.)

## VI.    ANALYSIS

### A.    Opinion Evidence and the RFC Determination

A claimant's RFC reflects what he or she "can still do despite his or her limitations." *Desmond v. Astrue*, No. 11-CV-0818 (VEB), 2012 WL 6648625, at *5 (N.D.N.Y. Dec. 20, 2012) (quoting *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999)). To determine a claimant's RFC, "the ALJ considers a claimant's physical abilities, mental abilities, symptomatology, including pain and other limitations that could interfere with work activities on a regular and continuing basis." *Id*. (citing 20 C.F.R. § 404.1545(a)); *see also* 20 C.F.R. § 416.945(a). The ALJ assesses RFC "based on all of the relevant medical and other evidence." 20 C.F.R. § 416.945(a)(3). The RFC assessment does not have to "perfectly correspond" with any of the medical source opinions cited in the ALJ's decision; rather, the ALJ is "entitled to weigh all of the evidence available to make an RFC finding that [i]s consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (citation omitted) (summary order). The Court upholds an RFC finding "when there is substantial evidence in the record to support each requirement listed in the regulations." *Desmond*, 2012 WL 6648625, at *5 (citation omitted).

In terms of weighing opinion evidence, the Second Circuit has long recognized the "treating physician rule" set out in 20 C.F.R. § 416.927(c). "Thus, the opinion of a claimant's treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it is 'well-supported by medically acceptable clinical and laboratory diagnostic

techniques and is not inconsistent with the other substantial evidence in the case record.'" *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (quoting *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008)). However, there are situations where the treating physician's opinion is not entitled to controlling weight, in which case "the ALJ must explicitly consider, *inter alia*: (1) the frequen[c]y, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." *Greek*, 802 F.3d at 375 (quoting *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013)). After considering these factors, "the ALJ must 'comprehensively set forth [his] reasons for the weight assigned to a treating physician's opinion.'" *Greek*, 802 F.3d at 375 (quoting *Burgess*, 537 F.3d at 129). "The failure to provide 'good reasons' for not crediting the opinion of a claimant's treating physician is a ground for remand." *Id*. (quoting *Burgess*, 537 F.3d at 129-30). However, "[w]here an ALJ's reasoning and adherence to the Regulations is clear, []he is not required to explicitly go through each and every factor of the Regulation." *Blinkovitch v. Comm'r of Soc. Sec.*, No. 3:15-CV-1196 (GTS/WBC), 2017 WL 782979, at *4 (N.D.N.Y. Jan. 23, 2017) (citing *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013)), *report-recommendation adopted by* 2017 WL 782901 (N.D.N.Y. Feb. 28, 2017).

In assessing a plaintiff's RFC, an ALJ is entitled to rely on opinions from both examining and non-examining State agency medical consultants because these consultants are qualified experts in the field of social security disability. *See Frey ex rel. A.O. v. Astrue*, 485 F. App'x 484, 487 (2d Cir. 2012) (summary order) ("The report of a State agency medical consultant constitutes expert opinion evidence which can be given weight if supported by medical evidence in the record."); *Little v. Colvin*, 14-CV-0063 (MAD), 2015 WL 1399586, at *9 (N.D.N.Y. Mar.

26, 2015) ("State agency physicians are qualified as experts in the evaluation of medical issues in disability claims.  As such, their opinions may constitute substantial evidence if they are consistent with the record as a whole.") (internal quotation marks omitted).

The factors for considering opinions from non-treating medical sources are the same as those for assessing treating sources, with the consideration of whether the source examined the claimant replacing the consideration of the treatment relationship between the source and the claimant.  *See* 20 C.F.R. § 416.927(c)(1)-(6).

### B.      The ALJ's Determination

The ALJ determined Plaintiff has the RFC to perform light work except he cannot work in hazardous environments or climb ladders and similar devices.  (T. 22.)  In reaching the RFC determination, the ALJ assigned great weight to Dr. Lorensen's opinion that Plaintiff has no gross limitations sitting, standing, walking, or handling small objects because it was consistent with Dr. Lorensen's examination which showed normal functioning in most areas examined.  (T. 24.)  The ALJ gave little weight to Dr. Lorensen's opinion that Plaintiff has moderate restrictions bending, lifting, and reaching because she found Plaintiff had full motor strength and range of motion in his upper extremities and made observations that did not indicate limitations in performing postural maneuvers, including an ability to squat and get on and off of the examination table unassisted.  *Id*.

The ALJ assigned little weight to Dr. Silverstein's opinion because it was not supported by Plaintiff's treatment notes.  (T. 25.)  The ALJ further noted Plaintiff's own description of his work and household activity strongly suggested he was capable of tasks beyond the restriction noted by Dr. Silverstein.  *Id*.  The ALJ explained greater weight was given to Dr. Lorensen's

opinion because it was consistent with her examination of Plaintiff and with Plaintiff's description of his activities and lifestyle.  *Id.*

Great weight was also given to the state agency assessment that Plaintiff can perform light work because it was consistent with and well supported by the evidence as whole, including the physical examination findings, medical history, the degree of treatment needed, and Plaintiff's description of his activities.  *Id.*

Additionally, the ALJ found Plaintiff's allegations of functional limitations were not entirely credible to the extent alleged and were not entirely consistent with the medical evidence and other evidence in the record.  (T. 23-24.)

### C.    Substantial Evidence Supports the ALJ's Analysis of the Opinion Evidence and Plaintiff's RFC

#### 1.    Opinion of Dr. Silverstein—Treating Physician

Plaintiff argues the ALJ failed to provide "good reasons supported by the evidence for the rejection of Dr. Silverstein's opinion."  (Dkt. No. 9 at 13.)  For the reasons discussed below, the Court agrees with the Commissioner that the ALJ's assignment of "little weight" to Dr. Silverstein's opinion was proper because the opinion was not consistent with his treatment records, the medical evidence overall, and Plaintiff's reported activities.  (Dkt. No. 12 at 12-15.)

Generally, the opinion of the treating physician will not be afforded controlling weight when the treating physician issued opinions that were not consistent with those of other medical experts and is contradicted by other substantial evidence in the record.  *Halloran*, 362 F.3d at 32; 20 C.F.R. § 404.1527(c)(2); *Snell*, 177 F.3d at 133 ("When other substantial evidence in the record conflicts with the treating physician's opinion . . . that opinion will not be deemed

controlling. And the less consistent that opinion is with the record as a whole, the less weight it will be given.").

As the ALJ discussed, Dr. Silverstein's opinion was not consistent with other substantial evidence of record, including Plaintiff's treatment notes and Plaintiff's activities. (T. 25); *see* 20 C.F.R. § 416.927(c)(3) (the ALJ will give more weight to a medical opinion that is supported by relevant evidence); *see Dumas v. Schweiker*, 712 F.2d 1545, 1553 (2d Cir. 1983) ("An ALJ "is entitled to rely not only on what the record says, but also on what the record does not say."). As set forth above, Plaintiff established primary care with Dr. Silverstein in September 2014. (T. 727.) Plaintiff appeared healthy with no signs of acute distress, he reported his general health was "good," and denied musculoskeletal symptoms. (T. 727-29.) In April 2015, Plaintiff reported exercising five times per week and reported pain on the back of neck, lower back pain, and right ankle pain. *Id.* In July 2015, Plaintiff requested Tramadol for his pain. (T. 720.) Later that month, Plaintiff reported that his back pain was mostly well controlled, but he had flare-ups. (T. 719.) He denied myalgia, back pain, muscle pain, and spasms. *Id.* By August 2015, Plaintiff reported feeling better. (T. 714.) In December 2015, it was noted Plaintiff had limited range of motion in the spine with pain. (T. 712.) The Court agrees that these relatively benign treatment notes do not include any findings that approach the functional limitations described in Dr. Silverstein's medical source statement. Furthermore, Dr. Silverstein's opinion is primarily a check the box form, which lacks any supporting explanation. (T. 823-25.)

The ALJ subsequently discussed Plaintiff's daily activity level, including driving friends to appointments up to five times per day and helping a friend with housework, and discussed other record evidence, including Dr. Lorensen's opinion that Plaintiff had no gross limitations in sitting, standing, walking, or handlining small objects. (T. 24, 25.) The ALJ explained he

assigned greater weight to Dr. Lorensen's opinion because it was consistent with the examination, which showed normal functioning in most areas examined.  (T. 25.)  For example, Dr. Lorensen observed Plaintiff had a normal gait, could walk on his heels and toes without difficulty, could fully squat, had a normal stance, used no assistive devises, needed no help changing for the examination or getting on and off the examination table, and could rise from a chair without difficulty.  (T. 606.)  Notably, the SLR test was negative bilaterally.  (T. 607.)  The ALJ further noted there was no record of orthopedic care, physical therapy, or assistive devises for ambulation.  (T. 24.)

Plaintiff's argument that the ALJ failed to appropriately consider the regulator factors when assigning Dr. Silverstein's opinion little weight is without merit.  Here, the ALJ plainly found Dr. Silverstein's opinion lacked support and was inconsistent with other substantial evidence.  *See* C.F.R. § 416.927(c)(3)-(4).  By referring to Dr. Silverstein as Plaintiff's treating physician and referring to the treatment notes, ALJ implicitly considered the treating and examining relationship.  *See id*. § 416.927(c)(3)-(4).  The ALJ also noted there was no record of orthopedic care.  (T. 24.)

Based on the foregoing, the Court finds the ALJ adequately explained his reasons for discounting Dr. Silverstein's findings.  Indeed, the Second Circuit does not require "slavish recitation of each and every factor where the ALJ's reasoning and adherence to the regulation are clear."  *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013) (citing *Halloran*, 362 F.3d at 31-32) (affirming ALJ opinion which did "not expressly acknowledge the treating physician rule," but where "the substance of the treating physician rule was not traversed"); *see, e.g.*, *Gladle v. Astrue*, No. 7:05-CV-797 (NAM/GJD), 2008 WL 4411655, at *5 (N.D.N.Y. Sept. 23, 2008) (finding ALJ properly discounted opinion of treating physician where it was inconsistent with

treatment records and objective findings of consultative examiner); *Harrington v. Colvin*, No.
14-CV-6044P, 2015 WL 790756 at *16 (W.D.N.Y. Feb. 25, 2015) (ALJ properly discounted
treating physician opinion where it assessed limitations that were inconsistent with findings
contained in the treatment records and with admissions claimant had made concerning his
activities of daily living).

Plaintiff also argues the ALJ failed to consider imaging and treatment notes from Dr.
O'Quinn, which he believes supports Dr. Silverstein's opinion. (Dkt. No. 9 at 14.) However,
this argument amounts to nothing more than a request for this Court to reweigh the evidence,
something that is prohibited by the limited scope of this Court's review. *See Warren v. Comm'r*
*of Soc. Sec.*, 3:15-CV-1185 (GTS/WBC), 2016 WL 7223338, at *9 (N.D.N.Y. Nov. 18, 2016)
("When applying the substantial evidence test to a finding that a plaintiff was not disabled, the
Court 'will not reweigh the evidence presented at the administrative hearing, . . . nor will it
determine whether [the applicant] actually was disabled. [Rather], [a]bsent an error of law by
the Secretary, [a] court must affirm her decision if there is substantial evidence [in the record] to
support it.'") (quoting *Lefford v. McCall*, 916 F. Supp. 150, 155 (N.D.N.Y. 1996) (alteration in
original)), *report-recommendation adopted by* 2016 WL 7238947 (N.D.N.Y. Dec. 13, 2016);
*Vincent v. Shalala*, 830 F. Supp. 126, 133 (N.D.N.Y. 1993) ("[I]t is not the function of the
reviewing court to reweigh the evidence.") (citing *Carroll v. Sec'y of Health and Human Servs.*,
705 F.2d 638, 642 (2d Cir. 1983)).

Further, while Plaintiff claims there is no indication the ALJ even considered the imaging
and Dr. O'Quinn's treatment notes when determining what weight to accord Dr. Silverstein's
opinion, the Court notes the record was held open to receive this evidence. (T. 17, 61-62, 72-
73.) Specifically, the ALJ's decision states the received records from St. Joseph Hospital,

Syracuse Recovery Services, CNY Spine and Pain Medicine (which includes the imaging and Dr. O'Quinn's treatments notes at issue), and Dr. Silverstein's medical source statement, which "have been exhibited at B19F through 23F, and have been reviewed and considered in making this decision."  (T. 17. )  An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered.  *Brault v. Soc. Sec. Admin. Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012).

Furthermore, contrary to Plaintiff's contention, the ALJ's RFC analysis does in fact discuss some of the imaging records and Dr. O'Quinn's treatment notes.  For instance, the ALJ notes that while later imaging records in 2015 note advanced degenerative disc disease at L5-S1 with a left herniation of the disc, records did not indicate Plaintiff was a surgical candidate.  (T. 25, 694.)  The ALJ also states that while later records note diminished range of motion in both flexion and extension in his lumbar spine, Plaintiff reported improvement with medial branch blocks, which were administered by Dr. O'Quinn in 2016, and his pain was managed on Tramadol.  (T. 25, 715, 814, 816.)

Plaintiff correctly points out the ALJ's decision does not discuss the 2016 X-ray, which revealed severe disc narrowing at L5-S1 with an eight-millimeter subluxation of L5 on S1 and Dr. Quinn's treatment notes from 2016 show facet tenderness at L3, L4, L5, and SI, and limited range of motion with pain.  (Dkt. No. 9 at 14; *see* T. 693, 814, 820.)  Though Plaintiff contends "this evidence supports Dr. Silverstein's opinion," he does not explain how this evidence supports the range of restrictions included in Dr. Silverstein's opinion nor does he explain how this evidence undermines the ALJ's decision or shows it was unreasonable.  (Dkt. No. 9 at 14.)  While these findings are certainly not benign, the evidence does not show nerve impingement or suggest limitations beyond the ALJ's RFC.  *See McIntyre*, 758 F.3d at 150 ("If the evidence is

susceptible to more than one rational interpretation, the Commissioner's conclusions must be upheld.").

For all the reasons stated, the treating physician rule was properly applied, and the Court finds substantial evidence in the record to support the ALJ's determinations.

2.    Opinion of Dr. Lorensen—Consultative Examiner

Plaintiff argues the ALJ failed to properly analyze Dr. Lorensen's opinion in accordance with the regulations. (Dkt. No. 9 at 11-12.) Specifically, Plaintiff argues the ALJ erred by rejecting Dr. Lorensen's opinion that Plaintiff had moderate limitations in his ability to bend, lift, and reach, the ALJ impermissibly substituted his own lay opinion for that of an acceptable medical source, and substantial evidence in the record supports Dr. Lorensen's opined limitations, including Dr. Silverstein's opinion that Plaintiff could only occasionally bend, occasionally lift ten pounds, rarely lift twenty pounds, and occasionally reach. *Id.* The Court agrees with the Commissioner that the ALJ properly assessed the opinion of Dr. Lorensen and appropriately gave great weight to those portions of the opinion that he found supported by substantial evidence and little weight to the remainder of the opinion. (Dkt. No. 12 at 9-12.)

As an initial matter, the ALJ's adoption of only a portion of an opinion was not inherently improper. *See Walker v. Colvin*, No. 3:15-CV-465 (CFH), 2016 WL 4768806, at *10 (N.D.N.Y. Sept. 13, 2016) ("[A]n ALJ may properly 'credit those portions of a consultative examiner's opinion which the ALJ finds supported by substantial evidence of record and reject portions which are not so supported.' This is true even where the ALJ relies on a consultative examiner's examination findings, but rejects the consultative examiner's medical source statement[.]"). Indeed, "[a]lthough the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the

evidence available to make an RFC finding that was consistent with the record as a whole." *Matta*, 508 F. App'x at 56; *see also Tennant v. Comm'r of Soc. Sec.*, No. 6:16-CV-360 (DJS), 2017 WL 1968674, *8 (N.D.N.Y. May 10, 2017); *Allen o/b/o Allen v. Comm'r of Soc. Sec.*, No. 5:16-CV-1207 (WBC), 2017 WL 6001830, *6 (N.D.N.Y. Dec. 4, 2017). An ALJ may therefore accept portions of a medical opinion that are consistent with the record, and choose not to accept portions that are inconsistent with the record.

Here, although Dr. Lorensen found diminished range of motion of Plaintiff's lumbar spine, hips, and knees, given the other findings, all of which were essentially normal, and in light of the record as a whole, the Court concludes the ALJ's decision to discount Dr. Lorensen's opinion that Plaintiff had moderate restrictions in bending, lifting, and reaching was supported by substantial evidence. *See, e.g.*, *Disotell v. Comm'r of Soc. Sec.*, No. 7:16-CV-0480 (WBC), 2017 WL 3491851, at *5 (N.D.N.Y. Aug. 14, 2017) (substantial evidence supported the ALJ's decision to reject consultative examiner's opinion that the claimant had marked limitations in reaching); *Babcock v. Berryhill*, No. 5:17-cv-00580 (BKS), 2018 WL 4347795, at *13 (N.D.N.Y. Sept. 12, 2018) (substantial evidence supported the ALJ's decision to reject consultative examiner's opinion that the claimant had moderate to marked limitations reaching); *Dierdre R. Comm'r of Soc. Sec.*, No. 5:17-cv-0395 (TWD), 2018 WL 4565769, at *8 (N.D.N.Y. Sept. 24, 2018) (substantial evidence supported the ALJ's decision to reject consultative examiner's opinion that the claimant had moderate to marked restrictions bending, lifting, and reaching).

Notably, the ALJ found Dr. Lorensen's finding that Plaintiff had full motor strength in his upper and lower extremities, full range of motion in his upper extremities, could squat fully, could get on and off the examination table unassisted, and could rise from a chair without

difficulty is not consistent with these limitations.  (T. 606-08.)  It is well settled in the Second

Circuit that it is the ALJ's role to weigh medical opinion evidence and to resolve conflicts in that

evidence.  *See Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012) ("In our review,

we defer to the Commissioner's resolution of conflicting evidence.").  Moreover, "[i]f the

evidence is susceptible to more than one rational interpretation, the Commissioner's conclusions

must be upheld."  *McIntyre*, 758 F.3d at 149.

Additionally, the Court agrees with the Commissioner that even had the ALJ accepted

Dr. Lorensen's opined limitations, moderate limitations in lifting, bending, and reaching does not

necessarily preclude the performance of light work.  *See, e.g.*, *Babcock*, 2018 WL 4347795, at

*12 n.13 (noting moderate to marked restriction in lifting was consistent with light work);

*Moxham v. Comm'r of Soc. Sec.*, No. 3:16-CV-1170 (DJS), 2018 WL 1175210, at *8 (N.D.N.Y.

Mar. 5, 2018) (finding marked limitations in squatting, lifting, and carrying is not inconsistent

with light work); *Humes v. Colvin*, No. 3:14-CV-0512 (GTS), 2016 WL 1417823, at *2

(N.D.N.Y. Apr. 11, 2016) (adopting report-recommendation finding marked limitations in

bending and squatting is not inconsistent with light work, which requires occasional bending).

As to Plaintiff's argument that the ALJ impermissibly substituted his own lay opinion for

that of an acceptable medical source, as discussed above, the Court finds the ALJ cited sufficient

evidence in the record to support his determination regarding Plaintiff's RFC for less than full

range of light work.  *See Moxham*, 2018 WL 1175210, at *7 ("There is no legal requirement that

the ALJ rely on a medical opinion in every case to formulate the RFC.  Rather, the ALJ has the

responsibility of reviewing the evidence, resolving the inconsistencies, and making a

determination consistent with the evidence as a whole."); *Bunce v. Comm'r of Soc. Sec.*, No.

6:14-CV-761 (GTS/ATB), 2015 WL 5330299, at *13 (N.D.N.Y. Sept. 11, 2015) (ALJ's

consideration of medical opinion evidence supported by substantial evidence where he assigned the opinion of consultative examiner "great weight," because, among other things, it was consistent with consultative examiner's own examination findings).

In light of the foregoing, the Court finds Plaintiff's RFC is supported by substantial evidence and remand is not required on this basis.

3.    Opinion of C. Ballard—Single Decision Maker

The ALJ gave great weight to the state agency assessment that Plaintiff can perform the full range of light work because it was consistent with and well supported by the evidence as whole, including the physical examination findings, medical history, the degree of treatment needed, and Plaintiff's daily activities.  (T. 25, T. 80.)  Plaintiff argues the assignment of weight to the single decision maker's ("SDM") opinion and reliance on it to formulate Plaintiff's RFC is clear legal error requiring remand.  (Dkt. No. 9 at 10-11.)  The Court agrees with the Commissioner that the ALJ's reliance upon the SDM's opinion was harmless error.  (Dkt. No. 12 at 6-9.)

"SDMs are non-physician disability examiners who 'may make the initial disability determination in most cases without requiring the signature of a medical consultant.'"  *Lozama v. Colvin*, No. 1:13-CV-0020 (GTS), 2016 WL 1259411, at *5 (N.D.N.Y. Mar. 30, 2016) (quoting *Hart v. Astrue*, 32 F. Supp. 3d 227, 237 (N.D.N.Y. 2012)).  Because SDMs are not medical professionals, courts have concluded that an SDM's RFC assessment is "entitled to no weight as a medical opinion."  *Durakovic v. Comm'r of Soc. Sec.*, No. 3:15-CV-0894 (TJM/WBC), 2018 WL 4039372, at *7 (N.D.N.Y. May 30, 2018) (collecting cases).  Thus, it is legal error to weigh an SDM's opinion as if he or she were a medical professional.  *Id*. (citing *Box v. Colvin*, 3 F. Supp. 3d 27, 46 (E.D.N.Y. 2014)).

First, contrary to Plaintiff's suggestion that the ALJ"s RFC "mirrors" the SDM's opinion for "light work," the ALJ's RFC was more restrictive inasmuch as the ALJ found Plaintiff cannot work in hazardous environments or climb ladders and similar devices. (*Compare* T. 22 *with* T . 79-80.) Second, as set forth above, the ALJ's RFC finding is supported by substantial evidence. Thus, any error the ALJ may have made in affording the opinion of a SDM is harmless because even if the opinion was afforded no weight, there is still substantial evidence in the record to support the ALJ's RFC determination. *Hart*, 32 F. Supp. 3d 227, 237 (N.D.N.Y. 2012) (ALJ's decision to afford weight to a SDM's assessment was harmless error because the ALJ adopted greater restrictions in the RFC determination and it was clear that "the ALJ would have reached the same conclusion even if she had assigned no evidentiary weight to the SDM's assessment."); *Durakovic*, 2018 WL 4039372, at *8 (same). Remand is therefore not required on this basis.

Accordingly, for the reasons outlined above, the Court finds Plaintiff's RFC is based upon proper legal standards and is supported by substantial evidence.

### D. Step Five Determination

Plaintiff lastly argues the ALJ's failure to properly consider the opinion evidence was harmful because (1) had he been limited to sedentary work as opined by Dr. Silverstein, he would have been found disabled under the Medical-Vocations Guidelines under Rule 201.12; and (2) had the ALJ properly considered Dr. Lorensen's opinion, a moderate reaching limitation would have been included in the RFC and Plaintiff could not have been found to perform the jobs identified by the VE. (Dkt. No. 9 at 16.) Because the Court finds Plaintiff's RFC is based

upon proper legal standards and is supported by substantial evidence, the Court need not address

Plaintiff's contention that the ALJ's Step Five finding was deficient.[6]

In light of the foregoing, the Court finds that the ALJ's decision was based upon correct

legal standards, and substantial evidence supports his determination that Plaintiff was not under a

disability within the meaning of the SSA.  20 C.F.R. §416.920(g).

**ACCORDINGLY**, it is hereby

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 9) is

**DENIED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 12) is

**GRANTED**; and it is further

**ORDERED** that Defendant's decision denying Plaintiff disability benefits is

**AFFIRMED**, and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.


Dated: March 11, 2019
　　　　Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge

---

[6] The Court notes, however, the VE testified that, even adding (1) moderate limitations in reaching, lifting, and bending; (2) a sit/stand option, and (3) a limitation to jobs not requiring being responsible for the safety of others, a fast pace, or daily work quota to the ALJ's RFC, Plaintiff could still perform as a ticket taker and officer helper.  (T. 69-70.)  Thus, even with a moderate limitation in reaching, Plaintiff could perform jobs that exist in the national economy in sufficient numbers.